UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-cv-

BELIEVE PURSUE LLC,

     Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

     Defendants.

_____/

## COMPLAINT

Plaintiff, BELIEVE PURSUE LLC ("Believe Pursue" or "Plaintiff"), hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A attached hereto[1] (collectively, "Defendants"):

### INTRODUCTION

1.    This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's registered BELLABOOTY Trademark, which is covered by U.S. Trademark Registration No. 7,210,643 (the "BELLABOOTY Trademark"). The registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration

_____

[1] Plaintiff intends to file a motion to file the Schedule A under seal. As such, the Schedule A currently attached is redacted to conceal any information that could identify the Defendants' Seller Names.

certificate for the BELLABOOTY Trademark is attached as **Exhibit 1**.

2.      This is also an action for patent infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiff's design patent for a hip thrust exercise belt, U.S. Patent No. D983,897 S (the "BELLABOOTY Patent") (together the BELLABOOTY Patent with the BELLABOOTY Trademark, the "BELLABOOTY IP"). The BELLABOOTY Patent is valid, subsisting, and in full force and effect. Plaintiff is the owner and lawful assignee of all rights, title, and interest in and to the BELLABOOTY Patent, which is duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the BELLABOOTY Patent is attached as **Exhibit 2**.

3.      Each Defendant directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products infringing Plaintiff's BELLABOOTY IP (the "Counterfeit Products") in the United States, including in this Judicial District, and otherwise purposefully directs infringing activities to this district in connection with the Counterfeit Products. By selling Counterfeit Products that purport to be genuine and authorized products using the BELLABOOTY IP, Defendants cause confusion and deception in the marketplace.

4.      Defendants conduct this activity through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including but not limited to the platform eBay.com ("eBay") (the "Marketplace Platforms").

5.      The Defendants design the online marketplace accounts to appear to be selling

Plaintiff's genuine product (the "<u>BELLABOOTY Belt</u>"), while selling inferior imitations of such product.

6.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

7.      Defendants attempt to avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the BELLABOOTY Trademark and infringement of the BELLABOOTY Patent, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8.      As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishing of its valuable trademark and goodwill. Plaintiff is further irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design. Plaintiff therefore seeks injunctive and monetary relief.

## <u>SUBJECT MATTER JURISDICTION</u>

9.      This Court has original subject matter jurisdiction over the trademark infringement in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

10.      This Court has original subject matter jurisdiction over the patent infringement claim arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, §§ 271, 285, 283, 284, 285, 289, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

11.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and FRCP § 48.193(1)(a)(6) or, in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, each Defendant regularly conducts, transacts, and/or solicits business in Florida and in this Judicial District, and/or derives substantial revenue from business transactions in Florida and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

12.     In addition, each Defendant has offered to sell and ship and/or sold and shipped Counterfeit Products into this Judicial District. Defendants' infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District. For example:

        a.      Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to Florida addresses located in this Judicial District.

        b.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as Amazon, eBay, Shein, Temu, and Walmart, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their

4

listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Florida (and specifically, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and specifically, in this Judicial District).

        c.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

13.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) because Defendants have committed acts of trademark and/or patent infringement in this Judicial District, conduct substantial business in the Judicial District, and have registered agents in this Judicial District. Specifically, Defendants are reaching out to do business with Florida residents by operating one or Defendant Internet Stores through which Florida residents can purchase products infringing on the BELLABOOTY IP. Each Defendant has targeted sales from Florida residents by operating online stores that offer shipping to the United States, including Florida and this Judicial District. Each Defendant is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

## THE PLAINTIFF

14.     Plaintiff, BELIEVE PURSUE LLC, is a limited liability company organized and existing under the laws of the State of California and has its principal place of business in Los Angeles, California.  Plaintiff specializes in the development and marketing of its genuine BELLABOOTY Belt and is the registered owner of the BELLABOOTY Trademark (referenced above, copies of federal registrations attached as Exhibit 1).  Plaintiff is also the owner and lawful assignee of all rights, title, and interest, in and to the BELLABOOTY Patent (referenced above,

copies attached as Exhibit 2).

15.    Plaintiff is a leading supplier and manufacturer of its exclusive BELLABOOTY Belt, which encompasses proprietary technology, and has earned an international reputation for quality, reliability and value.

## THE BELLABOOTY BELT

16.    Plaintiff is the official source of the BELLABOOTY Belt in the United States, and was the first to market a hip thrust exercise belt, the BELLABOOTY Belt, with a game changing design.  The BELLABOOTY Belt is a comfortable and efficient way to perform hip thrusts and other exercises at home.  The BELLABOOTY Belt features slip resistant padding that protects the user's hips and flexibility to hold dumbbells, kettlebells and plates up to 400lbs, pictured below.





*Exemplary Images of Plaintiff's Products Using Patented Slip Resistant Technology*

17.     Since at least 2018, the BELLABOOTY Trademark is and has been the subject of substantial and continuous marketing and promotion by Plaintiff.  Plaintiff has and continues to widely market and promote the BELLABOOTY Trademark in the industry and to consumers. Plaintiff's promotional efforts include—by way of example but not limitation—through substantial marketing and advertising on the internet, print media, its website (www.bellabooty.com), advertising campaigns on Google and Amazon, and social media advertising campaigns on Facebook, Instagram, and TikTok.

18.     The BELLABOOTY Trademark (attached as Exhibit 1) is distinctive and identifies the merchandise as goods from Plaintiff.  The registration for the BELLABOOTY Trademark constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use that trademark pursuant to 15 U.S.C. § 1057(b).

19.     The BELLABOOTY Trademark qualifies as a famous mark, as that term is used in 15 U.S.C. §1125 (c)(1), and has been continuously used and never abandoned.

20.     Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the BELLABOOTY Trademark.  As a result, products bearing the BELLABOOTY Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

21.     Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the BELLABOOTY Patent (attached as Exhibit 2).

22.     The BELLABOOTY Belt embodies at least a portion of the design depicted in the BELLABOOTY Patent.

**THE DEFENDANTS**

23.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China and/or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Florida and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell infringing Outward Hound Products to consumers within the United States, including Florida and in this Judicial District.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

24.     The success of the BELLABOOTY Belt has resulted in significant infringement and counterfeiting.  Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon, eBay, Shein, Temu, and Walmart, which were offering for sale, selling, and importing the counterfeit BELLABOOTY Belt to consumers in this Judicial District and throughout the United States.

25.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

26.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling a genuine BELLABOOTY Belt.

27.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal.  Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

28.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

29.     Plaintiff has not licensed or authorized Defendants to use the BELLABOOTY Trademark or BELLABOOTY Patent, and none of the Defendants is an authorized retailer of the genuine BELLABOOTY Belt.

30.     On personal knowledge and belief, Defendants deceive unknowing consumers by using the BELLABOOTY Trademark without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the Counterfeit Products themselves.

31.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using the BELLABOOTY Trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for the BELLABOOTY Belt. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO")

tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for the genuine BELLABOOTY Belt.  Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.  As such, Plaintiff also seeks to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell the Counterfeit Products into this Judicial District.

32.     On personal knowledge and belief, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold Counterfeit Products to residents of Florida.

33.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done. And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information.

34.     On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive e-commerce operations, and to avoid being shut down.

35.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For

example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the Defendant Internet Stores.

36.     In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

37.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

38.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

39.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

---

[2]https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites") (Last visited February 24, 2026).

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (Last visited February 24, 2026).

40.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

41.     Furthermore, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

42.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

43.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the BELLABOOTY IP in connection with the advertisement, distribution, offering for sale, sale and import of Counterfeit Products into the United States and Florida over the Internet.

44.     Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell Counterfeit Products into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**JOINDER**

45.     This case involves Defendants who are engaging in trademark and design patent

infringement by operating e-commerce stores that trade upon Plaintiff's reputation and goodwill.

46.     All thirty-three (33) Defendants use the same online marketplace platform, eBay, to sell unauthorized and unlicensed products that mimic those covered by the BELLABOOTY Patent.

47.     Similarly, Defendants advertise the same identical infringing product (illustrated below) to advertise their inferior imitation products, suggesting a common source of manufacture. These defendants design their online stores to appear as though they are selling genuine BELLABOOTY Products while in fact selling infringing versions.

*Exemplary Counterfeit Products Sold on Defendant Internet Stores*





48.    Their marketplace accounts share unique identifiers, such as the use of the same images of the Counterfeit Products, which suggest a logical relationship between them and indicate that their illegal activities stem from the same transaction, occurrence, or series of transactions or occurrences.

49.    Defendants conceal their identities and the full scope of their operations, relying on the vast reach of the Internet and international borders to continue their infringement. Defendants

are collectively engaged in infringing activities, operating under fictitious names and are all based in China, or other foreign jurisdictions.

50.     Because the claims against these Defendants arise from the same transaction, occurrence, or series of transactions or occurrences, warranting their inclusion in a single action, joinder is proper here.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

51.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–50 of this Complaint.

52.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered BELLABOOTY Trademark in connection with the sale, offering for sale, distribution, and/or advertising of Counterfeit Products.  The BELLABOOTY Trademark is a highly distinctive mark.  Consumers have come to expect the highest quality from Plaintiff's products provided under the BELLABOOTY Trademark.

53.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the BELLABOOTY Trademark without Plaintiff's permission.

54.     Plaintiff is the registered owner of the BELLABOOTY Trademark and official source of the BELLABOOTY Belt.  The United States Registration for the BELLABOOTY Trademark (Exhibit 1) is in full force and effect.  Upon information and belief, Defendants have knowledge of Plaintiff's rights in the BELLABOOTY Trademark and are willfully infringing and intentionally using counterfeits of the BELLABOOTY Trademark.  Defendants' willful, intentional, and unauthorized use of the BELLABOOTY Trademark is likely to cause and is

causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

55.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

56.     The injuries and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit BELLABOOTY Belt.

57.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BELLABOOTY Trademark.

## SECOND CAUSE OF ACTION
## DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)

58.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–50 of this Complaint.

59.     Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Counterfeit Products that infringe directly and/or indirectly the BELLABOOTY Patent.

60.     For example, below is a comparison of figures from Plaintiff's BELLABOOTY Patent and images of one of Defendants' Counterfeit Products sold on a Defendant Internet Store.



Fig. 1

*Figures from the BELLABOOTY Patent*



*Exemplary Counterfeit Product Sold on Defendant Internet Store*

61.     Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

62.     Defendants have infringed the BELLABOOTY Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused

Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design.

63.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

64.     Plaintiff is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     using the BELLABOOTY Trademark registration or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any products that are not the genuine BELLABOOTY Belt or which are not authorized by Plaintiff to be sold in connection with the BELLABOOTY Trademark;

b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine BELLABOOTY Belt or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BELLABOOTY Trademark;

c.     committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff.

d.       further infringing the BELLABOOTY Trademark and damaging Plaintiff's goodwill;

e.       shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the BELLABOOTY Trademark or any reproductions, counterfeit copies, or colorable imitations thereof;

f.       using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Internet Stores, or any other domain name or Online Marketplace Account that is being used to sell or is the means by which Defendants could continue to sell its Counterfeit Products; and

g.       operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the BELLABOOTY Trademark or any reproduction, counterfeit copy, or colorable imitation thereof that is not the genuine BELLABOOTY Belt or which is not authorized by Plaintiff to be sold in connection with the BELLABOOTY Trademark.

2.       That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.       making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, embodiment, copy or colorable imitation of the designs claimed in the BELLABOOTY Patent;

b.       passing off, inducing, or enabling others to sell or pass off any product as the genuine BELLABOOTY Belt or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BELLABOOTY Patent;

c.       further infringing the BELLABOOTY Patent and damaging Plaintiff's goodwill;

d.       aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the BELLABOOTY Patent;

e.       shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which infringe the BELLABOOTY Patent; and

f.       operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing the BELLABOOTY Patent.

3.       Entry of an Order that the Marketplace Platforms, including without limitation, Amazon, eBay, Shein, Temu, Walmart, and any other online marketplace account through which Defendants are selling Counterfeit Products:

a.       disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with the Defendants listed on the Schedule A;

b.       disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

c.      take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

4.      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BELLABOOTY Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5.      That that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of Plaintiff's BELLABOOTY Patent, pursuant to 35 U.S.C. § 289;

6.      In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the BELLABOOTY Trademark; and statutory damages pursuant to 35 U.S.C. § 289 of not less than $250 for each and every use of the BELLABOOTY Patent;

7.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8.      Award any and all other relief that this Court deems just and proper.

Dated: March 3, 2026                          Respectfully submitted,

                                              **BOIES SCHILLER FLEXNER LLP**

                                              */s/ Nicole Fundora*
                                              Nicole Fundora (FL Bar No. 1010231)
                                              100 SE 2nd Street
                                              Suite 2800
                                              Miami, FL 33131
                                              Tel: (305) 539-8400
                                              nfundora@bsfllp.com

                                              *Attorney for Plaintiff, BELIEVE PURSUE LLC*